Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT
for the

Northern District of Ohio

Eastern Division

**1:22 CV 1455**

**JUDGE POLSTER**

**MAG. JUDGE GREENBERG**

| | |
|---|---|
| John Koe<br>*Plaintiff(s)*<br>(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)<br>-v-<br><br>University Hospitals Health System, Inc.,<br>University Hospitals Cleveland Medical Center<br>*Defendant(s)*<br>(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | Case No. _____<br>*(to be filled in by the Clerk's Office)*<br><br>Jury Trial: *(check one)* ☒ Yes ☐ No<br><br>FILED<br>AUG 15 2022<br>CLERK, U.S. DISTRICT COURT<br>NORTHERN DISTRICT OF OHIO<br>CLEVELAND |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

**I.    The Parties to This Complaint**

**A.    The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | John Koe, a pseudonym |
| Street Address | PO Box 527 |
| City and County | Novelty, Geauga County |
| State and Zip Code | OH 44072-0527 |
| Telephone Number | 330 732 5001 |
| E-mail Address | john@johnkoe.org |

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

**B.     The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1
  Name                       UNIVERSITY HOSPITALS HEALTH SYSTEM, INC..
  Job or Title *(if known)*  c/o ACFB INC., Statutory Agent
  Street Address             200 PUBLIC SQUARE, STE 2300
  City and County            CLEVELAND CUYAHOGA
  State and Zip Code         OH 44114
  Telephone Number
  E-mail Address *(if known)*

Defendant No. 2
  Name                       UNIVERSITY HOSPITALS CLEVELAND MEDICALCENTER
  Job or Title *(if known)*  c/o ACFB INC., Statutory Agent
  Street Address             200 PUBLIC SQUARE, STE 2300
  City and County            CLEVELAND CUYAHOGA
  State and Zip Code         OH 44114
  Telephone Number
  E-mail Address *(if known)*

Defendant No. 3
  Name
  Job or Title *(if known)*
  Street Address
  City and County
  State and Zip Code
  Telephone Number
  E-mail Address *(if known)*

Defendant No. 4
  Name
  Job or Title *(if known)*
  Street Address
  City and County
  State and Zip Code

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

           Telephone Number

           E-mail Address *(if known)*

### C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | CASE WESTERN RESERVE UNIVERSITY/UNIVERSITY HOSPITALS CLEVELAND MEDICAL CENTER |
| Street Address | 11100 EUCLID AVE |
| City and County | CLEVELAND CUYAHOGA |
| State and Zip Code | OHIO |
| Telephone Number | (216) 983-0648 |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

    *(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

    *(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☒ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

    *(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☒ Other federal law *(specify the federal law)*:

Genetic Information Nondiscrimination Act of 2008, as codified, 42 U.S.C §§ 2000ff et seq..

☐ Relevant state law *(specify, if known)*:

☐ Relevant city or county law *(specify, if known)*:

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

### III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☒ Termination of my employment.
- ☐ Failure to promote me.
- ☒ Failure to accommodate my disability.
- ☒ Unequal terms and conditions of my employment.
- ☒ Retaliation.
- ☒ Other acts *(specify)*: ADAProhibited Medical Exam/Inquiry, ADA Interference, GINA Acquisition; Post-Discharge Retaliation

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)

Since at least June 3, 2020 ; Medical Exam/Inquiry on September 4, 2020; Discharge on April 23, 2021

C. I believe that defendant(s) *(check one)*:
- ☒ is/are still committing these acts against me.
- ☐ is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☐ race
- ☐ color
- ☒ gender/sex    male
- ☐ religion
- ☐ national origin
- ☐ age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*
- ☒ disability or perceived disability *(specify disability)*

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

> A. Actual: (Episodic) migraine headaches, a physiological condition affecting and substantially limiting neurological function, including special sense organ funcitons ./ substantiall limit […] . When active,
>
> B. Record of a head injury that subtantially limited major life activities including, but not limited to of concentrating, reading, andlearning for over 6 months;
>
> C. Perceived errorneously regarded as having a chemical dependency; regarded as having a physiological impariment that limited sleep; alternately regarded as having the other physiological conditions or impariments above

E.    The facts of my case are as follows. Attach additional pages if needed.

Plaintiff Koe requests Motion for Leave to Proceed Anonymously.

During his medical residency program, Koe was subjected to unlawful disability and gender discrimination via Defendants' mandatory Employee Assistance Program policies and practices.

This court generally looks to the factors established in Doe v. Porter, 370 F.3d 558, 560 (6th Cir. 2004):
(1) whether the plaintiff is challenging governmental activity;
(2) whether prosecution of the action will compel plaintiff to disclose information "of the utmost intimacy";
(3) whether the litigation compels plaintiff to disclose an intention to violate the law, thereby risking criminal prosecution; and
(4) whether plaintiff is a minor.

In bringing this action, Koe is compelled to disclose information of the "utmost intimacy" including conversations pertaining to counselling sessions protected by the privilege stablished by Jaffee v. Redmond, 518 U.S. 1. Koe's medical decisions relating to his health care and treatment are sensitive and personal matters warranting use of a pseudonym. The district court's decision in Roe v. Catholic Health Initiatives Colorado is particularly instructive. There, the court noted that both the Americans with Disabilities Act and Title VII itself prohibit employers from disclosing an employee's private medical records or making improper inquiries into an employee's medical conditions. 2012 WL 12840, at *3-4. Given those general prohibitions, (see 42 U.S.C. §12112((d)(4)(c) (mandating that employers treat employee's "medical information" as "a confidential medical record")), the court noted that forcing a plaintiff whose claims arise out of medical issues and medical records to litigate in their own name would necessarily force a violation of the federal statutes at issue. In fact, the court found that requiring a plaintiff in such circumstances to litigate in their own name would force the court – itself – to violate some provisions of federal law. See 2012 WL 12840, at *5 ("The court also recognizes that, if it requires Plaintiff to proceed under her own name, the court itself may be violating at least the spirit of the provisions of the ADA that protect any information gathered from a medical examination as confidential. The court is not inclined to do so." (emphasis added) (citation omitted)). The same should hold true here.

In fact, when the case involves issues of "the recipients of certain medical treatment," "the desire to maintain the anonymity of the [plaintiffs] is motivated by legitimate reasons." Bryan C. v. Lambrew, No. 1:21-cv-00005-NT, 2021 WL 242422, *1 (D. Me. Jan. 25, 2021). Here, Koe's Complaint is inextricably intertwined with their receipt of (or request not to receive) certain medical treatment. (V. Compl. ¶¶ 1-9.) Thus, Plaintiff's request to proceed under a pseudonym is legitimate and compelling. The Motion should be granted.

Plaintiff Koe files this action under Title I of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Amendments Act of 2008 ("ADA"), Title II of the Genetic Information Nondiscrimination Act ("GINA"), Title VII of the ... and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of discrimination and retaliation and to provide appropriate relief to John Koe ("Koe") who was adversely affected by such practices.

Defendants have continuously had at least 15 employees.
Defendant University Hospitals Cleveland Medical Center is a subsidiary of Defendant University Hospitals Health System, Inc.
Defendants (here forth "University Hospitals" or "UH") operate as an integrated enterprise that considered a single employer that employs Plaintiff Koe.
Defendants have continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA. 42 U.S.C. § 12111(7). and under Section 201 (2) (B) (i) of GINA. 42 U.S.C.§2000ff(2)(B)(i). which incorporate, by

reference. Sections 701(g) and (h) of Title VII. 42 U.S.C. §§ 2000e(g) and (h).
At all relevant times, Defendants have been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

UH maintains or maintained since at least March 2009 unlawful practices of conducting ... through its EAP.
The Commission's regulations at 29 CFR 1630.14(d) make it clear that an EAP must be voluntary to fall in to the exception created by the 42 USC 12112(d)(b).
Since at least March 2009,
Since at least November 21, 2009, UH via its EAP has requested or required family medical history from employees during mandatory examinations/inquiries.

Koe was a resident physician in the Case Western Reserve University / University Hospitals Cleveland Medical Center.
Koe began working for UH on or around June 20, 2019.

Koe is a medical doctor.
Koe is a qualified individual with disability as that term is defined by the ADA as amended.
At all relevant times, Koe could and still can perform the essential functions of his position as resident physician.

The Program Director of the UH Psychiatry Residency Program at all relevant times was Cathleen A. Cerny-Suelzer, MD.
Those who worked with Koe regarded Koe as an excellent and dedicated doctor and resident.
During his mid-PGY-1 review on or around February 28, 2020, Cerny-Suelzer and Hunt told Koe that he was performing well.
In April 2020, Susan Kimmel who worked with Koe left a review stating:

On May 12, 2020, Cerny-Suelzer emailed the residency program requesting help understanding why residents had reported fear of reprisal on the ACGME survey.
Koe, in his role as class representative, responded to Cerny-Seulzer's email in confidence with reasonable and good faith suggestions.

On June 3, 2020, Koe met with Cerny-Suelzer via Zoom as part of the end-of-year review process.
During this meeting, Koe complained and asked Cerny to stop malicious and discriminatory rumors being spread by residents and nursing staff that were so severe and pervasive that another resident had tried to perform a clinical interview and/or medical examination on him.
Cerny told Koe she did not see the problem.
Koe told Cerny that the other resident had tried to ask him detailed questions about his health and his families health. Koe noted that while it might not be forbidden by the ADA because the resident was not an Employer that he was asking her to stop what could be considered harassment on the basis of disability.
Cerny-Suelzer verbally attacked Koe telling him that he was a "narcissist" and that he needed to learn his place in the medical hierarchy.
When this meeting ended, Koe was disturbed by Cerny-Suelzer's hostility, but tried to forget about it.

Cerny-Suelzer did not take prompt and appropriate action as required by UH policy or best practices.
Cerny-Suelzer instead fostered rumors.

On July 31, 2020, Koe met with Cerny-Suelzer via Zoom for his end of year Program Director review.
During this meeting Cerny-Suelzer told Koe that he needed help and she was mandating that he have an assessment with UH's Tier 2 EAP.
Koe objected asking Cerny-Suelzer to explain her rationale.
Koe noted his performance evaluations from the supervisors he actually worked with were positive to

excellent.

On August 3, 2020, Koe spoke EAP Counselor Kurt Neumann and learned that the purpose of the assessment was to look for "pathology."
On August 3, 2020, Koe spoke with Cerny-Suelzer again seeking to know the specific basis for her directive that he has a medical examination/inquiry.

On August 7, 2020, Koe called the UH Compliance Department and UH Legal Department and left voice messages complaining of unlawful discrimination and retaliation and requesting a call back.
On August 7, 2020, Koe complained of harassment, retaliation, and disability discrimination to GME Manager William Rebello
On August 25, 2020, UH via HR Generalist VanStratton that he was required to have the assessment and that failure to comply could result in discharge.
Koe continued to object pointing out that hospital policy had not been followed.
On September 4, 2020, Koe re-iterated his reasonable and good faith belief that violated the Commission's regulations in a text he sent to Cerny-Suelzer.
Cerny-Suelzer told Koe that she was busy.
Koe responded to Cerny-Suelzer expressing that her failures to take prompt and appropriate action to stop rumors created a hostile workplace.
On September 4, 2020, Koe, fearing he would be discharged based on the threats issued by UH officials, met UH EAP Clinician Kurt Neumann, LPCC for the EAP assessment.
On September 8, 2020, Koe complained again to UH Director of GME Susan Nedorost MD about retaliation, harassment, and the unlawful medical examination/inquiry.
Nedorost admonished Koe to "move forward […] rather than looking back."

Koe responded summarizing his complaint in writing stating that Cerny had erupted in a hostile and intimidating manner about his email then suddenly told him he had to have a medical examination/inquiry based on vague concerns that she refused to discuss with him.

Nedorost told Koe she was optimistic that he could resolve his grievances by meeting with Cerny-Suelzer.
On September 9, 2020, Koe met with Cerny-Suelzer and Hunt at the directive of HR. During this meeting, Koe asked Cerny-Suelzer how "concerns" that she refused to let him address gave her the right to require him to have a medical examination.
On September 14, 2020, Psychiatry Residency faculty and VA Psychiatrist Jane A. Domb, MD via telephone threatened Koe that he better do what he was told.
On September 14, 2020, Koe contacted Nedorost expressing that meeting with Cerny-Suelzer had not resolved anything.
On October 9, 2020, Koe was summoned to meet with UH EAP Clinician Kurt Neumann, LPCC for a follow-up appointment.
Koe was forced, under verbal and written threat of discharge to sign a "Compliance Contract"
The Compliance Contract conditioned Koe's continued employment on his submission to ongoing compulsory counselling.
When Koe asked how long this would go on, Neumann told Koe until management was happy that it had worked.
In late November 2020, Koe realized the toll the ongoing discriminatory and retaliatory harassment was taking on him.
In December 2020, Koe informed Andrew W. Hunt MD that the unwarranted hostility toward him and the coercive counselling was interfering with his ability to participate in training opportunities.
Hunt told Koe that Cerny-Suelzer is an emotional person and that she thought something must be wrong with Koe based on his May 12, 2020 email.
In December 2020, Koe told Jeanne Lackamp that the hostility he was experiencing from supervising faculty was interfering with his ability to feel comfortable making patient safety reports without fear of retribution.

On January 14, 2021, Koe met EAP Clinician Kurt Neumann.
Neumann asked Koe for details of aa medical appointment Koe had pursuant to the "Compliance Contract."
Koe complained to Neumann that the mandatory EAP was a discriminatory and coercive practice.
Neumann admonished Koe to let it go warning him that it would make it worse to try to raise any grievances.
On or around January 27, 2021, Koe filed an inquiry with the EEOC via the Public Portal.
On or around February 1, 2021, Koe filed an unfair labor practice charge with the National Labor Relations Board alleging unlawful harassment via the September 4, 2020 prohibited medical inquiry/examination.
Pursuant to the NLRB's regulations at 29 CFR § 102.14, Koe filed a copy of the charge on Defendant University Hospitals Health System Inc. Vice President, Human Resources Julie A. Chester via Certified Mail.
On February 9, 2021, Koe sustained a concussion when his car hit black ice and he spun out while driving into work. Koe continued onto work.
On or around February 10, 2021, Cerny-Suelzer encouraged Koe to talk to Lackamp about any accommodations.
Koe informed Lackamp and…
On February 18, 2021, Koe gave testimony to the NLRB including its unlawful and coercive use of its Employee Assistance Program.
On February 23, 2021, Koe had an interview with Cleveland Field Office EEOC Investigator Brian Shelton via telephone.
On February 26, 2021, Koe was summoned for a meeting with Cerny-Suelzer, Hunt, and David J. Blank via Zoom.
Koe was told that he was being removed from his call shifts at the Cleveland VAMC.
When Blank and Cerny refused to proffer a specific reason, Koe requested a fact-finding investigation and due process.
Cerny-Suelzer told Koe that University Hospitals legal department had informed her that she needed to provide Koe with due process including written notice and a fair hearing.
Cerny-Suelzer promised to provide Koe with due process.
Cerny-Suelzer failed to do so.
On March 1, 2021, Koe asked EAP Clinician Kurt Neuman, LPCC for his EAP records for the purpose.
Neumann threatened Koe that he would have to tell the UH Legal department.
On or around March 3, 2021, National Labor Relations Board Region 08 sent University Hospitals a seeking detailed information about its Employee Assistance Program.
On March 3, 2021, Koe simultaneously filed notarized charges of unlawful employment practices with the EEOC and OCRC.
On March 9, 2021, Cerny-Suelzer informed Koe that he had been removed from his training assignment at the U.S. Department of Veterans Affairs.
On March 19, 2021, Koe met with Cerny-Suezler and Hunt for a very delayed mid-year Program Director review.
During this meeting, Koe was given a Performance Alert Notice or an official reprimand.
During this meeting, Koe was given the Program Director Performance Evaluation which included allegations outside of the relevant time period raised by the VA.
Cerny-Suelzer and Hunt emphasized that Koe could not appeal these actions per the Graduate Medical Education policy.
On March 20, 2021, Koe contacted Director of Graduate Medical Education Susan Nedorost reporting ongoing harassment and retaliation.
On March 23, 2021, Koe met with Nedorost and UH HR Generalist Kate Van Stratton. Koe reported…
They told Koe to keep it in the chain of command.

On March 24, 2021, Koe met with Chairman Robert J. Ronis MD and Stephen Ruedrich MD and detailed the harassment, intimidation, and retaliation that he and others were being subjected to.
Koe told Ronis and Ruedrich about his experience with EAP.

Koe asked Ronis to ensure a neutral 3rd party investigation.
Ronis asked Koe to let him handle the issue personally.
Ronis asked Koe to not to challenge the removal from the VA promising that he could progress in the Program without it.

On March 31, 2021, Koe met with Ronis…
Koe reasonably asked for….

On March 31, 2021, Koe met with Ronis and Cerny and discussed events leading up.
This meeting ended with Ronis instructing Cerny that they needed to meet with Koe again before any further decisions were made.
Cerny noted she was on leave the following week.

On or around April 13, 2021, Koe asked for written clarification of the performance expectations pursuant to the format that UH Graduate Medical Education suggested.
On April 15, 2021, Ronis threated Koe that he better changes his position or forget his hopes for a future in the residency program. Ronis said they would only be providing verbal clarification.

On April 21, 2021, Robert J. Ronis cancelled a meeting with Cerny-Suelzer, Hunt, and Koe scheduled that morning for verbal clarification.
Koe contacted Cerny-Suelzer and Hunt to ask that they utilize the meeting time per Ronis' directive.
Cerny-Suelzer refused to meet with Koe.

On April 22, 2021, Koe received a copy of Defendants April 20, 2021 Position Statement from EEOC Investigator Sabrina Rose Shifman.
Investigator Shifman asked Koe for documentation or records supporting the allegations in his charge.

On April 22, 2021, Koe contacted Neumann via telephone and informed him that he had had the medical evaluation on April 15, 2021.
Koe asked Neumann for a copy of his EAP records.
Neumann again told Koe that he would have to inform Defendants' legal counsel Koe was requesting his records.
Koe told Neumann that he had filed charges and that he was requesting records so that he could provide them as to federal agencies.
Neumann asked Koe to put his request in writing.
Neumann then asked Koe for details including the diagnosis of differential diagnoses and any work-up and treatment recommendations.
Koe expressed that he thought that UH had no business knowing these details.
Neumann implicitly threatened Koe telling him it was important to comply.
Koe, fearing discharge, answered Neumann's disability-related inquiries
Neumann then asked Koe to provide documentation from the medical appointment.
Koe opposed Neumann's request stating that he had just provided it verbally.
Neumann implicitly threatened Koe telling him it was important to comply.
Koe, fearing discharge, agreed to send Neumann medical documentation.
Koe sent Neumann an email with the requested medical documentation.
Koe sent Neumann a separate email requesting his medical records held by EAP.

On April 23, 2021 at around 10:00 AM, Koe joined a Zoom meeting with Ronis, Cerny-Suelzer, and Hunt.
Koe was told that this meeting would be utilized so that Ronis, Cerny-Suelzer, and Hunt could provide verbal clarification.

Koe was informed he was being terminated from his employment and residency position effective that day.

Koe was told that he was being discharged because his "privileges and/or rights to practice" at the Louis Stokes Cleveland VA Medical Center had been "revoked and/or restricted."
Koe was shown a termination letter that said "[p]pursuant to section 4.1.3 of the University Hospitals Resident Manual, this decision is not appealable."

Koe opposed the termination reason noting that he had been denied due process.
Koe had been told that being removed from the VA was not an issue.
Ronis, Cerny-Suelzer, and Hunt did not cite any other basis for the termination.
Ronis said that per the Resident Manual,
Ronis told Koe the purpose of the meeting was not to debate the decision with him.
Ronis told Koe that the decision had been made and that the decision would stand.

On April 23, 2021, Koe called Neumann and informed him that he had been terminated.
Koe informed Neumann he wanted to revoke any and all releases of information on file.

Defendants retaliatory and discriminatory discharge simultaneously ended Koe's employment, residency training position, and his federal appointment with the U.S. Department of Veterans Affairs.

The reason proffered at discharge was a pretext to cover up unlawful discrimination and retaliation.
Koe was not on probation.
Koe had not engaged in any misconduct.
Koe was continuing to perform his job well.
Koe was denied the due process required by ACGME accreditation requirements and U.S. Department of Veterans Affairs policy.
On belief and information, Cerny-Suelzer has never terminated a similarly situated female resident in such a fashion.
Cerny-Suelzer treated similarly situated females much more favorably than Koe.
Cerny-Suelzer treated similarly situated females with disabilities much more favorably than Koe.


University Hospitals has or had a policy or practice of allowing any employee to seek review of adverse action including termination.
Defendants' policy is or was called "HR-83 Complaint Resolution."

On April 26, 2021, Koe, via letter, requested review of the discharge per Defendants' policies.
Koe's letter noted the irregularities in the discharge and the denial of access to grievance procedures.
Koe's letter pointed out Veterans Health Administration Directive 1400.09 requires a partner institution, such as University Hospitals, to afford due process.
Koe's letter pointed out the erroneous and illogical construction of the rule that Defendants' used to terminate him.

On April 27, 2021, Defendants via Nedorost denied Koe's request for review of the termination.
On April 27, 2021, Defendants via Van Stratton denied Koe's request for an appeal

On or around August 2, 2021, Koe submitted an amended charge including the retaliatory discharge which was prepared by or revised by EEOC Investigator Sabrina Shifman.

Since August 2021, University Hospitals has continued to retaliate against Koe by acts including, but not limited to:
Withholding his transcript needed to find substantially similar employment
Interfering with Koe's access to benefits
Defendants acts above were done intentionally.
Defendants acts above with malice or with reckless disregard of Koe's federally protected rights.

Claims (without limitation):
I: ADA Medical Inquiry/Examination 42 U.S.C. § 12112(d)(4)(a):
II: GINA Acquisition - 42 U.S.C. § 2000ff-1(b)
III: ADA Discrimination 42 U.S.C. § 12112(a):
IV: Title VII - Gender-Based Discrimination:
V: ADA Interference. 42 U.S.C. § 12203(b):
II: ADA Retaliation. 42 U.S.C. § 12203(a):
III: GINA Retaliation - 42 U.S.C. § 2000ff-6ff:

Plaintiff Koe proceeding pro se due to sudden withdrawal of counsel anticipates to amend to this complaint.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

### IV. Exhaustion of Federal Administrative Remedies

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

Original Charge filed on or around March 3, 2021; Charge Amended on or around August 2, 2021

B. The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☒ issued a Notice of Right to Sue letter, which I received on *(date)* 5/17/2022 .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐ 60 days or more have elapsed.
☐ less than 60 days have elapsed.

### V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

A. Grant a permanent injunction enjoining Defendants, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from requiring employees to respond to unlawful disability-related inquiries or requiring employees to disclose genetic information.

B. Grant a permanent injunction enjoining Defendant Cummins, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from retaliating against employees because of their objections to responding to unlawful disability related inquiries or to providing genetic information.

C. Grant a permanent injunction enjoining Defendant Cummins, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from interfering, coercing or intimidating employees in the enjoyment or exercise of their right to not be required to respond to unlawful disability related inquiries, or to provide genetic information.

D. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

E. Order Defendants to make whole Koe by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial; reinstatement; front pay in lieu of reinstatement; and other affirmative relief necessary to eradicate the effects of its unlawful employment practices described in the paragraphs above.

F. Order Defendants to make whole Koe by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in the paragraphs above, including medical expenses, and retirement or pension contributions not covered by Defendant's employee benefit plan, in amounts to be determined at trial.

G. Order Defendants to make whole Koe by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in the paragraphs above, including, but not limited to, emotional distress, suffering, inconvenience, humiliation, injury to professional standing, injury to character or reputation, humiliation, indignity, familial strain, isolation, and grief resulting from the unlawful practices complained of above, in amounts to be determined at trial.

H. Order Defendants to pay Koe punitive damages for its malicious and reckless conduct, as described in the paragraphs above, in amounts to be determined at trial.

I. Grant such further relief as the Court deems necessary and proper in the public interest.

J. Award Koe costs of this action.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 8/15/2022

Signature of Plaintiff: /s/ John Koe

Printed Name of Plaintiff: John Koe

### B. For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address