Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination (Edited)

# UNITED STATES DISTRICT COURT

for the

Northern District of Ohio

Eastern Division

| | |
|---|---|
| NICHOLAS KRUDY | ) Case No. _____ |
| | ) *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | ) |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) Jury Trial: *(check one)* ☒Yes ☐No |
| -v- | ) |
| | ) |
| UNIVERSITY HOSPITALS HEALTH SYSTEM, INC.; UNIVERSITY HOSPITALS CLEVELAND MEDICAL CENTER | ) **PROPOSED** |
| *Defendant(s)* | ) |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) |

## 1ST AMENDED COMPLAINT FOR EMPLOYMENT DISCRIMINATION

I.     **The Parties to This Complaint**

A.     **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | NICHOLAS KRUDY |
| Street Address | PO BOX 527 |
| City and County | NOVELTY, GEAUGA CO. |
| State and Zip Code | OH 44072-0527 |
| Telephone Number | 330-732-5001 |
| E-mail Address | john@johnkoe.org |

B.     **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

    Name                      UNIVERSITY HOSPITALS HEALTH SYSTEM, INC.

    Job or Title *(if known)*

    Street Address            11100 EUCLID AVE

    City and County          CLEVELAND, CUYAHOGA COUNTY

    State and Zip Code      OH 44106

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 2

    Name                      UNIVERSITY HOSPITALS CLEVELAND MEDICAL CENTER

    Job or Title *(if known)*

    Street Address            11100 EUCLID AVE

    City and County          CLEVELAND CUYAHOGA COUNTY

    State and Zip Code      OH 44106

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

**C.** **Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | UNIVERSITY HOSPITALS CLEVELAND MEDICAL CENTER |
| Street Address | 11100 EUCLID AVE |
| City and County | CLEVELAND CUYAHOGA |
| State and Zip Code | OH 44106 |
| Telephone Number | |

## II.  Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☐     Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

        *(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐     Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

        *(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑     Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

        *(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑     Other federal law *(specify the federal law)*:
Genetic Information Nondiscrimination Act of 2008, as codified, 42 U.S.C. § 2000ff et seq.

☐     Relevant state law *(specify, if known)*:

☐     Relevant city or county law *(specify, if known)*:

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- [ ] Failure to hire me.
- [✓] Termination of my employment.
- [ ] Failure to promote me.
- [ ] Failure to accommodate my disability.
- [✓] Unequal terms and conditions of my employment.
- [✓] Retaliation / Interference
- [✓] Other acts *(specify)*: Prohibited Medical Exams/Inquiries.; Request(s) for Genetic Information

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)
June 3, 2020 - April 23, 2021; April 23, 2021 - present

C. I believe that defendant(s) *(check one)*:
- [✓] is/are still committing these acts against me.
- [ ] is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:
- [✓] reprisal — for participation and opposition
- [ ] color
- [ ] gender/sex
- [ ] religion
- [ ] national origin
- [ ] age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*
- [✓] disability or perceived disability *(specify disability)*
  erroneously regarded as suffering from chemical dep.

E. The facts of my case are as follows. Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

See attached.

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.   Exhaustion of Federal Administrative Remedies

A.   It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

On or about 03/03/2021; on or about 08/02/2021

B.   The Equal Employment Opportunity Commission *(check one)*:

☐  has not issued a Notice of Right to Sue letter.

☑  issued a Notice of Right to Sue letter, which I received on *(date)*   05/17/2022

C.   Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐  60 days or more have elapsed.

☐  less than 60 days have elapsed.

## V.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

See attached.

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:  _____02/25/2025_____

Signature of Plaintiff  _____

Printed Name of Plaintiff    Nicholas Krudy

### B.    For Attorneys

Date of signing:  _____

Signature of Attorney  _____

Printed Name of Attorney  _____

Bar Number  _____

Name of Law Firm  _____

Street Address  _____

State and Zip Code  _____

Telephone Number  _____

E-mail Address  _____

## FACTS

1. Plaintiff Nicholas Krudy ("Dr. Krudy"; "Plaintiff") resides in Geauga County, Ohio.

2. Defendant University Hospitals Health System, Inc. ("UHHS") is a domestic corporation with its principal place of business located in Cuyahoga County, Ohio.

3. Defendant University Hospitals Cleveland Medical Center ("UHCMC") is a domestic corporation with its principal place of business located in Cuyahoga County, Ohio.

4. UHHS together with its subsidiaries including UHCMC is an integrated health care system that does business under the brand name UH.

5. Defendants UHHS and UHCMC are employers.

6. Dr. Krudy was an employee of Defendant UHCMC and Defendant UHHS from on or about June 20, 2019 until he was unlawfully terminated on or about April 23, 2021.

7. Dr. Krudy was employed in the context of UH's Graduate Medical Education General (Adult) Psychiatry Residency Program which is 4 years in length.

8. Graduate Medical Education (GME), also known as residency training, is required on-the-job apprenticeship-like training for a medical doctor to become fully licensed to practice medicine and be eligible to take a specialty board examination.

9. Dr. Krudy received his medical degree from the Baylor College of Medicine in May 2019.

10. Dr. Krudy began working as a first-year resident physician for UH in its Psychiatry Residency Program on or about June 20, 2019.

11. At all relevant times, the Program Director for the Psychiatry Residency Program offered by UH was Cathleen A. Cerny-Suelzer, MD ("Dr. Cerny").

12. At all relevant times, the Associate Program Director for the Psychiatry Residency Program offered by UH was Andrew W. Hunt, MD ("Dr. Hunt").

- 1 -

13. At all relevant times, the Chair / Chief of Psychiatry for UH was Robert J. Ronis, MD ("Dr. Ronis").

14. At all relevant times, the Director of Graduate Medical Education responsible for oversight of UH's residency programs was Susan T. Nedorost, MD ("Dr. Nedorost").

15. On June 3, 2020, Dr. Krudy reported to Psychiatry Program Director Dr. Cerny that he had learned he had been the target rumors alleging that he had a physical or mental impairment that were severe enough to cause another resident physician tried to stage an "intervention" and conduct a medical examination on him.

16. Dr. Krudy asked Dr. Cerny to take prompt and appropriate corrective action to quash the discriminatory and harassing rumors and conduct.

17. Dr. Krudy completed his first year and began working as a second-year resident physician in or about the end of June 2020.

18. On July 31, 2020, Dr. Cerny met with UH HR Representative Katherine Van Stratton and UH EAP Manager Jill Fulton, LISW for approval to require Dr. Krudy to participate with UH's mandatory "Tier 2" Employee Assistance Program (EAP) process.

19. In justifying her action, Dr. Cerny noted Dr. Krudy had a history of a physical impairment and some claimed (erroneous) perception that he suffered from chemical dependency.

20. On July 31, 2020, Dr. Cerny informed Dr. Krudy that she was requiring him to have an assessment via the mandatory UH EAP process.

21. Dr. Cerny distinguished the assessment from a fitness-for-duty assessment.

22. In early August 2020, Dr. Krudy complained to UH via its Legal Department, Compliance Department, and Graduate Medical Education Manager William Rebello that the

decision to require him to have the mandatory assessment designed to reveal a disability was improper and an unlawful discriminatory practice.

23. On August 19, 2020, Dr. Krudy met with Director of Graduate Medical Education Dr. Nedorost and UH HR Representative Ms. Van Stratton about the complaints he had raised about the mandatory assessment.

24. Ms. Van Stratton reiterated to Dr. Krudy that the assessment and process he was being required to comply with was <u>not</u> fitness-for-duty related.

25. On August 25, 2020, UH via Ms. Van Stratton informed Dr. Krudy that he was still being required to comply with UH's mandatory EAP process and threatened Dr. Krudy with termination if he failed to comply.

26. UH required Dr. Krudy to participate in its mandatory EAP process and have a mandatory assessment as a condition of employment.

27. Under threat of termination, Dr. Krudy met with UH's in-house EAP for the mandatory assessment for September 4, 2020.

28. As a part of its process, UH required Dr. Krudy to submit to assessment performed by a licensed healthcare professional employed by UH as part of its in-house EAP, namely Kurt Neumann, LPCC ("Mr. Neumann").

29. As a part of the mandatory EAP process and assessment, Dr. Krudy was required, under threat of discharge, to execute a HIPPA Authorization form forfeiting his right to confidentiality and permitting UH's EAP to report information to UH managers and officials including Dr. Cerny, Dr. Nedorost, and Ms. Van Stratton.

- 3 -

30. During the assessment, Mr. Neumann performed a mental status examination on Dr. Krudy to screen for an impairment in his cognitive function, motor function, speech, perception, alertness, memory, and reasoning.

31. During the assessment, Mr. Neumann asked Dr. Krudy a litany of intrusive and unwarranted questions about his health that would tend to elicit information about a disability.

32. For example, Dr. Krudy was asked if he had any significant medical or mental health issues, history of psychiatric diagnoses of treatment, family history of substance abuse, family history of significant mental health issues, history of being abused as a child, history of being abused sexually, or history of being abused in a domestic relationship.

33. Many of these questions had nothing to do with Dr. Krudy's ability to work.

34. Under threat of termination, Dr. Krudy complied with UH's demands and answered the questions he was asked.

35. The mandatory assessment was an impermissible and overly broad examination that was a fishing expedition for any potential impairment or disorder that could conceivably affect the quality of an employee's job performance currently or in the future.

36. Following the assessment, Dr. Krudy continued to work without restrictions.

37. On September 8, 2020, Dr. Krudy expressed his opposition to UH via Dr. Nedorost over the decision to require him to have the mandatory assessment under threat of discharge and without any serious explanation.

38. On September 9, 2020, Dr. Krudy, in a meeting with Dr. Cerny and Dr. Hunt, opposed the mandated medical assessment and Cerny's failure to take action to quash the harassing gossip, rumors, and innuendo insinuating that he suffered from a physical or mental impairment.

39. Starting in October 2020, UH required Dr. Krudy, as a condition of employment and under threat of discharge, to follow up with its EAP, to comply with all recommendations and requests made by EAP, and to have an additional medical examination with a specialist physician.

40. Under threat of discharge, Dr. Krudy followed up with the UH EAP in November 2020, December 2020, and January 2021.

41. In January 2021, UH via its EAP requested that Krudy to provide medical documentation confirming he had seen a physician pursuant to its October 2020 directive.

42. In late January 2021, Dr. Krudy contacted the EEOC to file a charge against UH over the discriminatory harassment he was being subjected to by way of unwanted, unnecessary, intrusive, and unlawful medical inquiries under UH's mandatory EAP process and threat of discharge.

43. On or about February 1, 2021, Dr. Krudy filed a charge against UH with the National Labor Relations Board (NLRB) complaining about discriminatory harassment by way of the unwanted, unnecessary, intrusive, and unlawful medical inquiries he was being subjected to under the mandatory EAP process and threat of discharge.

44. On February 2, 2021, the NLRB served a copy of the charge on UH via its Vice President of Human Resources Julie Chester.

45. After learning of the charge, Defendants failed to take prompt and appropriate corrective action. Instead, Defendants began a sophisticated campaign of harassment designed to get rid of Dr. Krudy by making him quit and to lay the ground work to terminate him if he did not quit.

46. On or about March 3, 2021, Dr. Krudy filed charges of discrimination against UH over its mandatory EAP program with the U.S. Equal Employment Opportunity Commission ("EEOC")

- 5 -

complaining about being harassed by way of the unwanted, unnecessary, intrusive, and unlawful medical inquiries he was being subjected to under threat of discharge via UH's mandatory EAP process. The charge also specifically identified UH's practice of seeking family medical history in violation of the GINA.

47. On or about March 3, 2021, the NLRB served a request for information on UH about its mandatory EAP process and the decision to subject Dr. Krudy to that process.

48. On March 10, 2021, the EEOC served UH with official notice of the charge of discrimination that Dr. Krudy had filed alleging discriminatory practices on the basis of disability and retaliation including: harassment, intimidation, and prohibited medical inquiries.

49. On March 19, 2021, UH via Dr. Cerny and Dr. Hunt notified Dr. Krudy of claimed "concerns" about his performance raised by anonymous individuals.

50. Dr. Krudy had not been given specific notice of the claimed concerns and had not been given an opportunity to respond.

51. Dr. Cerny and Dr. Hunt told Dr. Krudy that he would have an opportunity to address the claimed concerns during a performance review period lasting through June 20, 2021.

52. On March 20, 2021, Dr. Krudy contacted Dr. Nedorost to report concerns about continued harassment and retaliation given the highly suspect and arbitrary nature of the performance action.

53. On March 24, 2021, Dr. Krudy met with UH Chief of Psychiatry Dr. Ronis and spoke with him about the discriminatory treatment he had been subjected to by Dr. Cerny via the mandatory EAP process and the arbitrary action being taken against him.

54. On or about April 13, 2021, Dr. Cerny indicated to Dr. Krudy again that the performance review period would last until or through June 20, 2021.

- 6 -

55. On April 15, 2021, the UH Chief of Psychiatry Dr. Ronis, in response a request for written and objective clarification related to performance expectations, accused Dr. Krudy of making the request for his "protection" given an expectation of an ongoing hostile environment and admonished him to reconsider his position and his hopes for his future with UH.

56. On or about April 20, 2021, the EEOC requested UH provide a response to the charge Dr. Krudy had filed in March.

57. On April 22, 2021, the EEOC notified Dr. Krudy that UH had submitted a response to his charge.

58. On April 22, 2021, UH via its EAP demanded Dr. Krudy provide information and documentation from the specialist medical appointment he had attended on April 15, 2021.

59. Dr. Krudy opposed that request expressing his belief that UH had no legitimate reason to request his medical information and that the requests constituted a violation of his rights protected by the ADA.

60. On April 22, 2021, Dr. Krudy requested his records from UH via its EAP.

61. On April 22, 2021, UH's EAP informed Dr. Krudy that it would need to inform the UH Legal Department about his request.

62. On April 23, 2021, Dr. Krudy joined a scheduled meeting with Dr. Ronis, Dr. Cerny, and Dr. Hunt. In this meeting, Dr. Krudy was informed his employment was being terminated effective immediately and that he could not appeal the decision through UH's standard process available to resident physicians subject to such actions.

63. UH claimed it had "sufficient grounds" to terminate Dr. Krudy immediately citing a purported adverse clinical privileging action taken against him at a non-UH facility.

64. In reality, no such action had been taken against Dr. Krudy.

65. Defendants seized upon their patently contrived pretext to prevent Krudy from appealing the termination decision and to cover up unlawful discrimination.

66. On or about April 26, 2021, Krudy contacted UH to request due process and review of the termination decision pursuant to any applicable UH policies.

67. UH denied Dr. Krudy's request for due process and review of the termination decision.

68. In August 2021, Dr. Krudy filed an amended charge with the EEOC alleging that he had been discharged because of his protected activity.

69. UH has continued to discriminate against Dr. Krudy because of his protected activity.

70. The unlawful employment practices complained of above were intentional.

71. The unlawful employment practices complained of above were done with malice or reckless indifference to Dr. Krudy's (and other employees') federally protected rights.

## CLAIMS

### COUNT I
### ADA Medical Inquiries/Examinations – 42 U.S.C. §12112(d)(4)(a)

72. Dr. Krudy restates each and every prior paragraph of this Complaint, as if it were fully restated.

73. Defendants via its mandatory EAP process required medical examination(s) of Dr. Krudy as a current employee that were not job-related and consistent with business necessity.

74. Defendants via its mandatory EAP process made disability-related inquiries of Dr. Krudy as a current employee that were not job-related and consistent with business necessity.

75. Defendants violated Section 102(d)(4)(A) of ADA, 42 U.S.C. § 12112(d)(4)(A) by subjecting Dr. Krudy to unlawful disability-related examinations/inquiries that were not job-related and consistent with business necessity.

76. As a result of Defendants' actions, Dr. Krudy has suffered economic harm including but not limited to legal expenses and medical expenses.

77. As a result of Defendants' discriminatory actions, Dr. Krudy has suffered losses including but not limited to emotional distress, suffering, inconvenience, humiliation, injury to professional standing, and injury to reputation

COUNT II
GINA Acquisition – 42 U.S.C. § 2000ff-l(b)

78. UH maintained a practice of requesting family medical history from employees during such non-voluntary assessments conducted by its in-house EAP from about November 2009 until at least April 2021.

79. During a mandatory assessment on September 4, 2020, UH sought and required employee Dr. Nicholas Krudy to disclose genetic information in the form of family medical history.

80. UH violated Section 202(b) of GINA, 42 U.S.C. § 2000ff-1(b), by seeking to acquire genetic information from Dr. Krudy in the form of family medical history.

81. UH's actions reflect malice or reckless indifference to Dr. Krudy's (and other employees') rights protected under the GINA.

COUNT III
ADA Discrimination / Harassment – 42 U.S.C. § 12112(a)

82. Dr. Krudy restates each and every prior paragraph of this Complaint, as if it were fully restated.

83. UH regarded Dr. Krudy as having a physical or mental impairment.

84. Dr. Krudy was qualified for his position as a second-year resident physician.

- 9 -

85. Dr. Krudy was performing his job duties as a resident physician consistent with Defendants' reasonable expectations.

86. UH discriminated against Dr. Krudy because it regarded him as disabled and on the basis of disability by expressly conditioning his employment on his submission to its mandatory EAP process involving medical examinations and inquiries that were not job-related and consistent with business necessity.

87. A reasonable employee would find these unwarranted examinations and inquiries intrusive, unwanted, unwelcome, and harassing.

88. Dr. Krudy found these unwarranted examinations and inquiries intrusive, unwanted, unwelcome, and harassing.

89. UH knew or should have known of the harassment and failed to respond with prompt and appropriate corrective action.

90. As a result of Defendants' actions, Dr. Krudy has suffered economic harm including but not limited to legal expenses and medical expenses.

91. As a result of Defendants' discriminatory actions, Dr. Krudy has suffered losses including but not limited to emotional distress, suffering, inconvenience, humiliation, injury to professional standing, and injury to reputation.

## COUNT IV
### Unlawful Interference / Coercion – 42 U.S.C. § 12203(b)

92. Dr. Krudy restates each and every prior paragraph of this Complaint, as if it were fully restated.

93. The ADA guarantees employees like Dr. Krudy the right to be free from medical inquiries that are not job-related and consistent with business necessity.

- 10 -

94. Defendants maintained policies with language threatening employees with discharge or other adverse treatment if they did not comply with its mandatory EAP process.

95. Defendants expressly threatened Dr. Krudy with loss of employment or other adverse treatment if he did not submit to prohibited medical examinations/inquiries.

96. Defendants' threats of discharge would reasonably tend to coerce, intimidate, or interfere with employees' exercise or enjoyment of rights protected by the ADA.

97. Defendants interfered with, coerced, or intimidated Dr. Krudy in the exercise of his right protected by the ADA to refuse to undergo unlawful disability-related examinations/inquiries that were not job-related and consistent with business necessity.

98. As a result of Defendants' actions, Dr. Krudy has suffered economic harm including but not limited to legal expenses and medical expenses.

99. As a result of Defendants' actions, Dr. Krudy has suffered losses including but not limited to emotional distress, suffering, inconvenience, and humiliation.

## COUNT VI
### ADA Retaliation – 42 U.S.C. § 12203(a)

100.    Dr. Krudy restates each and every prior paragraph of this Complaint, as if it were fully restated.

101.    Dr. Krudy engaged in protected activity under the ADA when he objected to UH's unlawful practices of requiring current employees to submit to medical examinations/inquiries under threat of discharge.

102.    Dr. Krudy's objections were reasonable and made in good faith.

103.    Dr. Krudy engaged in protected activity under the ADA when he filed a charge the EEOC against UH over its unlawful practice of requiring medical examinations of current

- 11 -

employees and threatening employees with termination to coerce them into submitting to such examinations.

104.    Defendants were aware of Dr. Krudy's protected activity.

105.    Defendants discharged and otherwise discriminated against Dr. Krudy because of his protected activity.

106.    Defendants' actions reflect retribution and/or a conscious disregard for Dr. Krudy's (and other employees') rights.

107.    Dr. Krudy's career and future employment prospects as a physician and as a psychiatrist have been severely compromised and damaged by Defendants' discriminatory actions.

108.    As a result of Defendants' discriminatory actions, Dr. Krudy has suffered economic harm including, without limitation, loss of pay, loss of benefits, loss of training, legal expenses, and medical expenses.

109.    As a result of Defendants' discriminatory actions, Dr. Krudy has also suffered losses including but not limited to emotional distress, suffering, inconvenience, humiliation, injury to professional standing, and injury to reputation.

## COUNT VII
### GINA Retaliation – 42 U.S.C. § 2000ff-6ff

110.    Dr. Krudy restates each and every prior paragraph of this Complaint, as if it were fully restated.

111.    Family medical history included within the definition of genetic information under the GINA.

112.     Dr. Krudy engaged in protected activity under the GINA when he filed a charge with the EEOC against UH over its unlawful practice of requesting or requiring genetic information in the form of family medical history from employees during non-voluntary assessments.

113.     Defendants were aware of Dr. Krudy's protected activity.

114.     Defendants discharged and otherwise discriminated against Dr. Krudy because of his protected activity.

115.     Dr. Krudy's career and future employment prospects as a physician and as a psychiatrist have been severely compromised and damaged by Defendants' discriminatory actions.

116.     As a result of Defendants' discriminatory actions, Dr. Krudy has suffered economic harm including, without limitation, loss of pay, loss of benefits, loss of training, legal expenses, and medical expenses.

117.     As a result of Defendants' discriminatory actions, Dr. Krudy has suffered losses including but not limited to emotional distress, suffering, inconvenience, humiliation, injury to professional standing, and injury to reputation.

118.     Defendants' actions reflect retribution and/or a conscious disregard for Dr. Krudy's (and other employees') rights.


RELIEF

A. Declare Defendants' practice of requiring medical examinations and making medical inquiries of current employees under the subterfuge of its mandatory EAP process described above unlawful under the ADA.

B.  Declare Defendants' practice of requesting or requiring family medical history unlawful under the GINA.

C.  Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from requiring employees to respond to unlawful disability-related inquiries or requiring employees to disclose genetic information.

D.  Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from retaliating against employees because of their objections to responding to unlawful disability related inquiries or to providing genetic information.

E.  Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from interfering, coercing or intimidating employees in the enjoyment or exercise of their right to not be required to respond to unlawful disability related inquiries, or to provide genetic information.

F.  Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

G.  Order Defendants to make whole Dr. Krudy by providing appropriate back pay with prejudgment interest, in an amount to be determined at trial, and other affirmative relief necessary to eradicate the effects of its actions against Dr. Krudy, including but not limited to reinstatement with retroactive seniority and benefits or front pay in lieu thereof.

H. Order Defendants to make whole Dr. Krudy by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices in amounts to be determined at trial.

I. Order Defendants to make whole Dr. Krudy by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including but not limited to emotional pain, suffering, and inconvenience in amounts to be determined at trial.

J. Order Defendants to pay Dr. Krudy punitive damages for the malicious and reckless conduct described above, in an amount to be determined at trial.

K. Grant such further relief as the Court deems to be just and equitable.


## JURY TRIAL DEMAND

Plaintiff Dr. Nicholas Krudy requests a jury trial on all triable questions raised by his Complaint.


Dated: February 25, 2025

Respectfully submitted,

*Nicholas Krudy*

Nicholas Krudy

Plaintiff, self-represented

Nicholas Krudy
PO Box 527
Novelty OH 44072-0527

Tel: (330) 732-5001
Email: john@johnkoe.org

**CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2025, I deposited a copy of the forgoing Motion for Relief and attached Proposed 1st Amended Complaint with the Clerk of the United States Court for the Northern District of Ohio. When the Clerk scans and uploads the document into CM/ECF, notice of this filing and service will be sent to all parties who are CM/ECF system users.

Nicholas Krudy

John Koe, a pseudonym
l/k/a/ Nicholas Krudy

Plaintiff, self-represented